**LOWENSTEIN SANDLER PC**
S. Jason Teele, Esq.
Sharon L. Levine, Esq.
1251 Avenue of the Americas, 18th Floor
New York, New York 10020
(212) 262-6700 (Telephone)
(212) 262-7402 (Facsimile)

-and-

65 Livingston Avenue
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)
*Proposed Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>MK Network, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br>(Joint Administration Requested)<br><br>Case No. 11-10859 |

**DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS PURSUANT TO §§ 11
U.S.C. 105, 361, 362 AND 363 APPROVING THE USE OF CASH COLLATERAL,
PROVIDING ADEQUATE PROTECTION AND SETTING A FINAL HEARING
<u>PURSUANT TO BANKRUPTCY RULE 4001</u>**

---

[1] The Debtors are: (i) MK Network, LLC and its subsidiaries: MedKnowledge Group, LLC; TCL Institute LLC; Insight Interactive Network LLC; MedKnowledge Communications LLC; InteliMed Communications LLC; MK Global Communications LLC; PharMediCom LLC; MES Communications LLC; Center for Health Care Education LLC; Medfinance LLC; Chester Education Group LLC; and, The Center for Medical Knowledge LLC (collectively, the "**MK Network Debtors**"); and, (ii) Meridian Behavioral Health LLC and its subsidiaries: Avalon Programs LLC; Alliance Clinic LLC; Cedar Ridge Treatment Center LLC; Meadow Creek LLC; Odyssey Programs LLC; Tapestry Treatment Center LLC; and, Twin Town Treatment Center LLC (collectively, the "**Meridian Debtors**" and together with the MK Network Debtors, collectively, the "**Debtors**").

The above captioned debtors and debtors in possession, by and through their proposed counsel, submit this motion (the "**Motion**") for entry of interim and final orders pursuant to 11 U.S.C. §§ 105, 361, 362 and 363 approving the use of cash collateral, providing adequate protection, and setting a final hearing pursuant to Rule 4001 of the Federal Rules of Bankruptcy Procedure. In support of this Motion, the Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are 11 U.S.C. §§ 105, 361, 362, and 363 and Rule 4001 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

**A.  General Background.**

2. On February 28, 2011 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**").

3. The Debtors continue to operate their businesses and manage their affairs as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner or creditors' committee has been appointed in this case.

4. Information regarding the Debtors' businesses and the events leading to these chapter 11 cases is set forth in the Affidavit Pursuant to Local Bankruptcy Rule 1007-2 and in Support of the Debtors' Petitions and First Day Motions, filed contemporaneously herewith (the "**First Day Affidavit**").

5. Through these chapter 11 cases, the Debtors intend to rehabilitate their businesses, deleverage their balance sheets and increase liquidity to satisfy the claims of the Fifth Street (defined below), vendors and other creditors under a plan of reorganization that promotes

the Debtors' business plan and complies with the applicable provisions of the Bankruptcy Code.

**B.     Nature of the Debtors' Business.**

6.     MK Network, LLC is a medical communications and continuing medical education company. The MK Network Debtors' medical communication services assist pharmaceutical and biotechnology brand teams with educating healthcare professionals on the features, benefits and appropriate prescribing of drugs. In addition, the MK Network Debtors offer continuing medical education opportunities to physicians and nurses.

7.     The MK Network Debtors collectively employ approximately 47 persons and have a monthly payroll of approximately $270,000.00.

8.     Meridian Behavioral Health Network LLC is the largest for-profit behavioral healthcare company in Minnesota. The Meridian Debtors offer a comprehensive array of outpatient, jail based, residential mental health and substance abuse services to men, women and pregnant women. The Meridian Debtors operate drug, alcohol and mental rehabilitation facilities and programs throughout Minnesota.

9.     The Meridian Debtors collectively employ approximately 220 persons and have a monthly payroll of approximately $700,000.00.

**C.     Pre-Petition Indebtedness And Capital Structure.**

  **i.     Secured Debt**

10.     The MK Network Debtors' liabilities include a secured credit facility in the approximate aggregate amount of $15,972,642.92 evidenced by a Credit Agreement among the Meridian Debtors and Fifth Street Finance Corporation ("**Fifth Street Finance Corp.**") dated as of December 1, 2008, as amended on various dates (the "**Prepetition MK Network Credit Agreement**").  Each of the MK Network Debtors are borrowers under the Prepetition MK Network Credit Agreement and substantially all of their assets are pledged as collateral for their obligations thereunder.

11.     The Meridian Debtors' liabilities include a secured credit facility in the

approximate aggregate amount of $4,844,534.77 evidenced by a Credit Agreement among the Meridian Debtors and Fifth Street Mezzanine Partners II, L.P. ("**Fifth Street Mezzanine Partners,** and, together with Fifth Street Finance Corp., "**Fifth Street**") dated as of January 1, 2007, as amended on various dates (the "**Prepetition Meridian Credit Agreement**"). Each of the Meridian Debtors are borrowers under the Prepetition Meridian Credit Agreement and substantially all of their assets are pledged as collateral for their obligations thereunder.

   **ii.**  **Unsecured Indebtedness.**

   12. As of the Petition Date, the Debtors collectively have approximately $750,000.00 in outstanding obligations to trade creditors and other vendors. The MK Network Debtors' unsecured debt totaled approximately $285,000.00 on the Petition Date, and the Meridian Debtors' unsecured debt totaled approximately $465,000.00 on the Petition Date.

   **iii.**  **Equity.**

   13. MK Network LLC is the sole member of MedKnowledge Group, LLC and TCL Institute LLC. MedKnowledge Group, LLC is the sole member of Insight Interactive Network LLC, MedKnowledge Communications LLC, InteliMed Communications LLC, MK Global Communications LLC, PharMediCom LLC, and MES Communications LLC. TCL is the sole member of Center for Health Care Education LLC and The Center for Medical Knowledge LLC. The membership interests of MK Networks LLC are owned by MK Investors, LLC, a special purpose vehicle of Triton Pacific Capital Partners, and Fifth Street Capital, The Customer Link, Inc., CHCE and Insight Interactive.

   14. Meridian Behavioral Health Network, LLC is the sole member of each of the Meridian Debtors. The membership interests of Meridian Behavioral Health Network, LLC is owned by Meridian Investors, LLC, a Triton Pacific Capital Partners special purpose vehicle, and Fifth Street Capital, Michael Bundy, Paul Cowdery, David Gnass, and E. Larry Atkins.

**C.**  **The Debtors' Need for the Use of Cash Collateral.**

   15. Without the immediate use of Fifth Street's cash collateral (the "**Cash**

**Collateral**"), the Debtors will be unable to pay salaries, rent, utilities and other operating expenses incurred in the ordinary course of business and may be forced to cease operations and terminate over two hundred sixty (260) employees. Thus, the Debtors' ability to preserve and maximize the value of their assets for all creditors (secured and unsecured) will be critically impaired, and their ability to reorganize, will be substantially jeopardized absent authority to use the Cash Collateral. Accordingly, the Debtors seek the entry of an interim, and subsequently a final, order authorizing the use of the Cash Collateral pursuant to the budget annexed hereto as **Exhibit A** (the "**Cash Collateral Budget**"), subject to a variance equal to the greater of ten percent (10%) of the expenses set forth in the Cash Collateral Budget. To the extent amounts set forth in the Cash Collateral Budget are not used in a given period, they may be spent in any subsequent period(s).

16. Through the use of Cash Collateral, the Debtors will be able to maintain their operations as going concerns while protecting, preserving and maximizing the value of their assets for all creditors including Fifth Street. In order to adequately protect Fifth Street's interests in the Debtors' assets, the Debtors propose to grant Fifth Street replacement liens on all of the Debtors' postpetition assets solely to the extent of any diminution in the value of the prepetition collateral.[2]

17. The Debtors respectfully submit that the proposed replacement liens will adequately protect Fifth Street within the meaning of section 361 of the Bankruptcy Code and maintain that they should be authorized to use the Cash Collateral in accordance with the Cash Collateral Budget.

---

[2] By proposing to grant Fifth Street the replacement liens on the Debtors' postpetition assets, the Debtors reserve the right to subsequently contest the validity, extent, priority, and/or perfection of Fifth Street's liens or seek to avoid such liens as preferential transfers or assert other potential claims.

## CONCISE STATEMENT OF RELIEF REQUESTED PURSUANT TO BANKRUPCY RULE 4001(b)(1)(B)[3]

18. By this Motion, the Debtors respectfully request that the Court enter an order pursuant to sections 105, 361, 362 and 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001:

(a) approving on an emergency basis an interim order substantially in the form submitted herewith, authorizing the Debtors to use the Cash Collateral and granting adequate protection to Fifth Street;

(b) granting Fifth Street replacement liens pursuant to section 361 and 363(c) and (e), solely to the extent of any diminution in value of their prepetition collateral;

(c) approving the manner of service of notice of this Motion;

(d) scheduling a final hearing on this Motion no earlier than 15 days after the service of the Motion pursuant to Bankruptcy Rule 4001(b); and

(e) granting such other and further relief to the Debtor as the Court deems just and proper.

### BASIS FOR RELIEF REQUESTED

19. Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor may not use cash collateral unless "(a) each entity that has an interest in such cash collateral consents; or (b) the court, after notice and a hearing, authorizes such use in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2). The Debtors require the immediate use of Cash Collateral to fund their day-to-day operations in chapter 11. Indeed, absent such relief, the Debtors' businesses will be brought to an immediate halt, with damaging consequences for the Debtors, their estates and creditors. The interests of Fifth Street in the Cash Collateral will be protected by replacement liens in the Debtors' assets to the extent of any diminution in the value of the collateral securing such liens and claims.

20. Section 363(e) of the Bankruptcy Code provides that, upon request of an

---

[3] This Motion is intended to provide only a summary of the relief requested. To the extent there are inconsistencies with the proposed interim order submitted herewith, the terms of the proposed order governs.

entity that has an interest in property to be used by a debtor, the Court shall "prohibit or condition such use… as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). The principal purpose of adequate protection is to safeguard the secured creditor against diminution in the value of its interests in property. *See In re 495 Central Park Avenue Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992). Although the term "adequate protection" is not defined in the Bankruptcy Code, section 361 of the Code sets forth three non-exclusive methods of how an interest in property may be adequately protected. *Id.*; *In re Shriver*, 33 B.R. 176, 181 (Bankr. N.D. Ohio 1983). The non-exclusive forms are: (a) lump sum cash payments to the extent that use of property results in a diminution of an entity's interest in property; (b) provision of additional or replacement liens to the extent that use of property results in a diminution in value of an entity's interest in property; and (c) such other relief as the will result in an entity realizing the indubitable equivalent of its interest in property. *See* 11 U.S.C. § 361.

21. As the foregoing list is neither exclusive nor exhaustive, there is a great deal of flexibility in terms of what may constitute adequate protection. *See In re O'Connor*, 808 F.2d 1393, 1396-97 (10th Cir. 1987). Ultimately, what constitutes adequate protection is determined on a case-by-case basis. *See In re 495 Central Park Avenue Corp.*, 136 B.R. at 631; *In re Mosello*, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996) (citing *In re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y.1986)); *In re Swedeland Development Group, Inc.*, 16 F.3d 552, 564 (3d Cir. 1994); *In re O'Connor*, 808 F.2d at 1393.

22. Courts have held that when the use of cash collateral facilitates the preservation of a debtor's going concern value, the secured creditor is adequately protected by virtue of the preservation or enhancement of the debtor's assets. *See*, *e.g.*, *In re Constable Plaza Assoc., L.P.*, 125 B.R. 98, 105 (Bankr. S.D.N.Y. 1991) (authorizing the use of cash collateral to operate and maintain the debtor's office building, thus protecting the secured lender's collateral); *In re Atrium Dev. Co.*, 159 B.R. 464, 470 (Bankr. E.D. Va. 1993) ("Adequate protection is typically established by the fact that cash is being used to maintain and enhance the value of the underlying income producing real property in which the creditor also usually holds a security

interest."). Regardless of the form of adequate protection given, "the entitlement to and measure of adequate protection is always determined by the extent of the anticipated or actual decrease in the value of the secured creditor's collateral during the bankruptcy case." *In re Swedeland Development Group, Inc.*, 16 F.3d 552, 564 (3d Cir. 1994); *see also In re Dunes Casino Hotel*, 69 B.R. 784, 793 (Bankr. D.N.J. 1986) ("Adequate protection is designed to preserve the secured creditor's position at the time of the bankruptcy.").

23. In these cases, the Debtors acknowledge that Fifth Street may be entitled to adequate protection against any diminution if the value of their prepetition collateral, and are providing Fifth Street with replacement liens to the extent of any such diminution. In addition, Fifth Street is also adequately protected by the Debtors' continued operation of their businesses and the resulting preservation of the going concern value of the Debtors' assets. *See*, *e.g.*, *In re T.H.B. Corp.*, 85 B.R. 192, 195 (Bankr. M.D. Mass 1988) (holding that the steady stream of revenue over the budget period, with new revenue replacing old, adequately protected the secured lender's interest in its collateral). The Debtors' use of its cash flow pursuant to the Cash Collateral Budget provides an additional layer of adequate protection to Fifth Street because the Cash Collateral Budget ensures that the Debtors' use of that cash flow will be limited to those items that are essential to operating the Debtors' businesses.

24. Without the use of the Cash Collateral, the Debtors will be unable to pay wages, rent, utilities, purchase critical goods or pay other expenses necessary to operate their businesses on a day-to-day basis, and would be required to immediately liquidate. The liquidation of the Debtors at this juncture would not be in the interests of any party in these cases, including, particularly, Fifth Street. The use of Cash Collateral therefore is critical to prevent the abrupt discontinuation of the Debtors' operations and the liquidation of the Debtors' assets.

25. The Debtors respectfully submit that cause has been shown for the entry of an interim order permitting the Debtors to immediately use the Cash Collateral and to excuse compliance with the 14-day stay embodied in Bankruptcy Rule 6004(h), to the extent it is

applicable here.

## NOTICE WITH RESPECT TO THE INTERIM ORDER

26. The Debtors submit that given their financial situation, the timing of the Debtors' chapter 11 petition, and the Debtors' immediate need for authorization to use the Cash Collateral, an expedited hearing as contemplated by Bankruptcy Rule 4001(b) is warranted. The Debtors will provide notice of this Motion and the proposed interim order by overnight mail, fax or email (to the extent practicable) to the Office of the United States Trustee, counsel for Fifth Street, and the Debtors' consolidated 20 largest unsecured creditors. The Debtors respectfully submit that such notice is sufficient and appropriate given the circumstances for the Court to schedule an emergent hearing at which the Debtors can seek the entry of the proposed Interim Order.

## NOTICE WITH RESPECT TO THE FINAL HEARING

27. Pursuant to Bankruptcy Rule 4001(b), the Debtors respectfully request that they be authorized to provide notice of the final hearing to be scheduled by the Court no sooner than 15 days after service of the Motion by serving a copy of the Motion (to the extent not previously served) together with any interim order granting this Motion, on the Office of the United States Trustee, counsel for Fifth Street, and the Debtors' consolidated 20 largest unsecured creditors. The Debtors' submit that notice constitutes sufficient notice of the final hearing pursuant to Bankruptcy Rule 4001(b) and Bankruptcy Rule 2002.

28. The Debtors have not previously sought the relief requested herein from this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form submitted herewith, granting the Motion on an interim basis and setting a hearing date for a final hearing on the Motion, and grant such other and further relief as is just and proper.

Respectfully submitted,

**LOWENSTEIN SANDLER PC**

/s/ *S. Jason Teele*
S. Jason Teele, Esq.
Sharon L. Levine, Esq.
1251 Avenue of the Americas, 18th Floor
New York, New York 10020
Tel: (212) 262-6700
Fax: (212) 262-7402

-and-

65 Livingston Avenue
Roseland, New Jersey 07068
Tel: (973) 597-2500
Fax: (973) 597-2400

*Proposed Counsel to the Debtors
and Debtors in Possession*

Dated: February 28, 2011
New York, New York

**Exhibit A**

**Consolidated Forecast: Meridian and MK Network**
4 WEEK CASH FORECAST

|  | 1 | 2 | 3 | 4 | |
|---|---|---|---|---|---|
| Week ending Saturday | 5-Mar | 12-Mar | 19-Mar | 26-Mar | Total |
| Cash, beginning of period | $ 2,137,842 | $ 1,932,558 | $ 1,438,948 | $ 1,727,710 | $ 2,137,842 |
| Accounts receivable collected | 494,599 | 105,962 | 563,671 | 298,984 | 1,463,217 |
| **Cash Disbursements, Operating Expenses:** | | | | | |
| Payroll | 82,205 | 376,514 | 0 | 355,014 | 813,733 |
| Payroll taxes | 86,405 | 13,000 | 86,405 | 13,000 | 198,810 |
| Employee Benefits | 110,866 | 0 | 0 | 0 | 110,866 |
| Rent / lease payments | 97,880 | 0 | 0 | 0 | 97,880 |
| Operating Expenses | 159,347 | 118,386 | 102,831 | 100,400 | 480,964 |
| Contract Services | 32,880 | 32,673 | 26,673 | 12,673 | 104,899 |
| Other Misc | 15,000 | 15,000 | 15,000 | 15,000 | 60,000 |
| American Express | 59,300 | 0 | 0 | 119,276 | 178,576 |
| Total Operating Expenses | 643,883 | 555,573 | 230,909 | 615,363 | 2,045,728 |
| **Cash Disbursements, Other Expenses:** | | | | | |
| Chapter 11 professional fees | 35,000 | 35,000 | 35,000 | 35,000 | 140,000 |
| Utility deposits | 12,000 | 0 | 0 | 0 | 12,000 |
| Other | 9,000 | 9,000 | 9,000 | 9,000 | 36,000 |
| Total Other Expenses | 56,000 | 44,000 | 44,000 | 44,000 | 188,000 |
| Net Cash Flow | (205,284) | (493,611) | 288,762 | (360,379) | (770,511) |
| Cash, End of Period | $ 1,932,558 | $ 1,438,948 | $ 1,727,710 | $ 1,367,331 | $ 1,367,331 |